(C. D. 713)

INTERNATIONAL FORWARDING CO., INC., ET AL. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided December 18, 1942)

*Jordan & Klingaman* (*Jacob L. Klingaman* of counsel) for the plaintiffs.
*Paul P. Rao*, Assistant Attorney General (*James F. Donnelly* and *Alfred A. Taylor, Jr.*, special attorneys), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

CLINE, Judge: In these suits against the United States, the plaintiffs seek to recover a part of the duty assessed on four different kinds of fresh vegetables imported from Cuba. The articles under

(1)

consideration are invoiced as "Cassavas," "Eggplants," "Mustard plants," and "Hairy squashes." Duty was assessed by the collector at the rate of 50 per centum ad valorem, as "vegetables in their natural state * * *, not specially provided for" under paragraph 774 of the Tariff Act of 1930, less 20 per centum by virtue of the provisions of the trade agreements with Cuba (T. D. 47232 and T. D. 50050).

It is claimed in the protests that the merchandise invoiced as "Cassavas" is free of duty as cassava under paragraph 1781; that the merchandise invoiced as "Eggplants" is dutiable at 1½ cents per pound as eggplant under paragraph 774, as amended by Presidential proclamation published in T. D. 45310 or at 0.006 cent per pound under the trade agreements with Cuba, supra; that the merchandise invoiced as "Mustard plants" is dutiable at 1½ cents per pound, less 20 per centum, as cabbage, under the trade agreement with the Netherlands, published in T. D. 48075, and the trade agreements with Cuba, supra; that the merchandise invoiced as "Hairy squashes" is dutiable at 0.012 cents per pound, as squash, or at 0.016 cents per pound (2 cents per pound less 20 per centum) under the trade agreements with Cuba, supra.

Twenty-seven cases were consolidated for trial. The first witness called by the plaintiffs was Mr. Thomas C. Libby who is employed by the customs brokerage firm which filed the entries. He testified that he called at the store of Tung Sang Co., the party in interest, and obtained four samples of the merchandise, one each of the commodities herein involved; that he saw the samples taken out of one of the shipments and he took those samples to Mr. Hackleman, who is regional supervisor with the United States Department of Agriculture; and requested to be informed of the correct names of those vegetables.

The next witness called by the plaintiff was Mr. Yee Fat Wo whose testimony was taken through an interpreter. He testified that he is manager of the firm Tung Sang Co., the importer; that he gave Mr. Libby, the first witness, four kinds of vegetables, namely, hairy squash, mustard plant, bitter melon, and lotus root; that his firm imported the four kinds of vegetables, especially in the winter; that the mustard plants, hairy squash, and bitter melons were all the same in the various importations. On cross-examination the witness testified that his firm did not handle vegetables grown in the United States; that hairy squashes are different vegetables from green or winter melons, which are sometimes called pumpkins; that he handles but one kind of mustard plants and lotus roots; that the eggplant he handles is not also called balsam pear; that the Chinese names for the vegetables in issue are Fu kwa, mao kwa, ling gao, and kai tsoy.

The plaintiffs introduced a letter from the United States Depart-

ment of Agriculture and it was agreed between counsel that if Mr. W. C. Hackleman, who signed the letter, was called as a witness he would testify to the facts contained in the communication. The letter was admitted in evidence and marked exhibit 1. The exhibit reads in part as follows:

. Complying with your request of February 6, I find that according to the best references that we have on tropical fruits and vegetables the common and the botanical name of the items listed in your letter, and of which you supplied one specimen each are as follows:

| Your designation | Common name | Botanical name |
|---|---|---|
| Cassava | Lotus Root | Nelumbium nelumbo |
| Eggplant | Chinese Eggplant or Balsam Pear | Momordica charantia |
| Hairy Squash | Hairy Squash | Benincasa cerifera |
| Mustard Plant | · Green Mustard Plant | Brassica juncia |

The defendant offered another letter from the United States Department of Agriculture, signed by Mr. H. L. Harrington, who is designated on the letter as "Marketing Specialist." The parties agreed that if Mr. Harrington was called as a witness he would testify to the matters set forth in the letter and it was admitted in evidence and marked exhibit 2. The pertinent parts of the exhibit read as follows:

Complying with your telephone request of yesterday, I am listing below the botanical names for the common varieties or kinds of cabbage, cassava, eggplant, and squash. The cassava is grown only in the tropics or subtropical countries, and therefore it might be questionable whether we could say that it is a common variety for the United States. I am listing two kinds, but it is my understanding that only the sweet cassava is used as a kitchen vegetable. I am also listing three different kinds of squash, all of which are common. Since one of the vegetables mentioned in previous correspondence was a member of the mustard family, I am also listing the botanical names for two kinds of mustard grown in the United States, although you did not specifically request this information:

| | |
|---|---|
| Bitter Cassava | Manihot manihot |
| Sweet Cassava | Manihot palmata aipi |
| Mustard | Brassica alba (white) |
| | Brassica Japonica (more common) |
| Cabbage | Brassica oleracea—var. capitata |
| Eggplant | Solanum melongena |
| Squash | Curcurbita maxima (winter squash) |
| | Curcurbita pepo (summer squash) |
| | Curcurbita moschata (often called pumpkins) · |

The defendant introduced also seven exhibits consisting of glass jars containing vegetables preserved in formaldehyde as follows: No. 3, hairy squash; No. 4–A and 4–B, mustard plants; No. 5, eggplant similar to the merchandise so invoiced; No. 5, lily root similar to the merchandise in issue; illustrative exhibit A, sweet cassava or Manihot palmata aipi; illustrative exhibit B, eggplant which bears the technical name Solanum melongena.

The defendant called Mr. Fong Mar, who is a Chinese interpreter employed by the Government. He testified to the meaning of the Chinese words which witness Yee Fat Wo used in describing the commodities, as follows:

A Fu kwa means bitter melon.   Mao kwa means hairy squash.   Ling gao means lotus root.   Kai tsoy means mustard plant.

Counsel for the plaintiffs confines the argument in his brief to the eggplant and the hairy squash and admits that there is nothing in the record to sustain the claim that the merchandise invoiced as "mustard plants" is cabbage or that the goods invoiced as "cassavas," which are shown to be lotus roots, are one of the products covered by paragraph 1781.   The plaintiffs argue in their brief that in determining what the merchandise may be for tariff purposes, the botanical names of the articles are of no importance, citing *Nix* v. *Hedden*, 149 U. S. 304; *Hummel Chemical Co.* v. *United States*, 29 C. C. P. A. (Customs) 178, C. A. D. 189.

Counsel for the defendant urges that the plaintiffs failed to show that the collector's assessment is wrong and that the classification claimed is correct; that an examination of the exhibits is sufficient to show that neither the hairy squash nor the Chinese eggplant falls within the botanical categories of squash and eggplant; and that the meanings of the words "squash" and "eggplant" as disclosed in the dictionaries and encyclopaedias are conclusive as to the common meanings of those words.

There is no question but that the commodities are vegetables in their natural state, but, if they are eggplants or squashes, they would be more specifically provided for under those designations.

We note that the common name of the merchandise invoiced as "eggplants" is given in exhibit 1 as "Chinese eggplant or Balsam pear."   The witness Yee Fat Wo, representing the importing firm, called it "bitter melon."   The word "eggplant" is defined in Webster's New International Dictionary as follows:

*eggplant, n.* a.  A solanaceous plant (*Solanum melongena*), of East Indian origin, allied to the potato.   b.  The large smooth ovoid fruit of this plant, white or dark purple when ripe.   It is highly esteemed as a garden vegetable, being usually sliced, dipped in batter or bread crumbs, and fried.

No definition of the words "Chinese eggplant" has been brought to our attention.   The term "Balsam pear," which is also used in exhibit 1 in describing the common name of the commodity, is defined in Funk & Wagnalls New Standard Dictionary as follows:

*balsam pear, n.*   An Old World tropical tendril-climbing vine (Momordica charantia), nearly allied to the balsam apple, and like it cultivated for ornament, but also for its fruit, eaten by American Chinese.   The dried rind is used medicinally.   Its odd seeds have given it with some the name of art-pumpkin.

It appears that the imported fruit grows on a tendril-climbing vine having the botanical name "Momordica charantia" while the eggplant

grows on a plant having the botanical name "Solanum melongena." There is a vast difference in appearance between the imported merchandise invoiced as "eggplants" (exhibit 5) and the sample of eggplant in illustrative exhibit B. We are of opinion that the record in this case is insufficient to establish that the merchandise invoiced as "eggplants" is in fact eggplant as that term is commonly understood.

Exhibit 1 gives the common name "Hairy squash" to the merchandise invoiced as "Hairy squashes" and it gives the botanical name as "Benincasa cerifera." The word "squash" is defined in Funk & Wagnalls New Standard Dictionary of the English Language as follows:

squash, n. (1) The fleshy edible fruit of any one of various trailing annuals of the genus Cucurbita, allied to the pumpkin. (2) Any one of the plants that bear this fruit; as, the winter squash (Cucurbita maxima) (used when ripe, the seeds being removed before cooking; kept for winter use); the Barbary, China, or musky s. (C. moschata); the summer squashes, mostly varieties of C. pepo (usually small, and eaten only when green, the seeds being cooked in them). At least sixty varieties of winter and summer squashes are recognized by horticulturists. * * * s.-gourd, n. same as squash. s.-melon.

The term "Benincasa certifera" is defined in the Standard Cyclopedia of Horticulture by L. H. Bailey as follows:

Benincasa. (name of an Italian nobleman). Cucurbitaceae. Annual running squash-like herbs grown sparingly for edible fruits.

Leaves 5 lobed soft-hairy: fls. solitary, yellow, monoecious, the staminate long-peduncled, the pistillate nearly sessile; corolla deeply lobed; tendrils 2–3-branched.—Two species in Trop. Asia.

hispida, Cogn. (B. cerifera, Savi) Fig. 536. Wax Gourd. White Gourd of India. Zit-kwa. Chinese Preserving Melon. Chinese Watermelon. Vine long, like a muskmelon, hairy, with cordate lobed lvs.: fr. mostly oblong, 10–16 in. long, hairy, white-waxy, with solid white flesh and small cucumber-like seeds. Cult. the same as muskmelon or cucumber. R. H. 1887:540.—Used for making preserves and sweet pickles; said to be eaten raw in warm countries, and the unripe frs. to be employed by natives in India in the making of curries.

No definition of the term "hairy squash" has been brought to our attention but it is evident from the definitions above quoted that botanically the hairy squash was derived from the same family as all other squashes, that is the Cucurbitaceae family. The record shows that a representative of the United States Department of Agriculture gives the common name of the commodity in exhibit 1 as "hairy squash" and the defendant's witness Fong Mar translated the Chinese words representing the name of the article as "hairy squash." Defendant's exhibit 3 is of very little assistance because we are unable to determine from a visual examination of it that the sample is not a variety of squash.

The term "squash" is used in the tariff provision and in the trade agreement with Cuba without limitation or qualification. In the case of Schade & Co. v. United States, 5 Ct. Cust. Appls. 465, T. D. 35002,

in classifying frozen wheat under the provision for "wheat," the court said:

\* \* \*. It is a general term, and the rule long established in tariff interpretation is that where a general term is used in the law without qualification it must, in the absence of a contrary commercial custom, be applied in its broadest significance, including every kind and class of merchandise properly referable thereto, either directly or as a species the genus of which is embraced within the particular tariff nomenclature.

That construction has been invoked in many decisions of the court. See *Balfour, Guthrie & Co., Ltd.* v. *United States*, 5 Cust. Ct. 180, C. D. 397, and decisions therein cited.

We are of opinion that hairy squash is a variety of squash and we hold the merchandise so invoiced dutiable under the provision for squash.

In the trade agreement with Cuba (T. D. 47232), which became effective on August 24, 1934, and under the terms of a subsequent agreement, dated December 19, 1939 (T. D. 50050), the rate of duty provided for squash in its natural state, imported from Cuba, is 0.012 cents per pound "when imported and entered for consumption during the period from December 1 to the following May 31, inclusive, in any years." All of the cases herein relating to hairy squashes are covered by the following protests: 27273–K, 28256–K, 28257–K, 28258–K, 31132–K, 31134–K, 32507–K, 35616–K, 54623–K and 54957–K. The merchandise covered by those protests was imported and entered between December 1 and May 31 in the years 1939 and 1940. We hold that all of the merchandise invoiced as "hairy squash" or "hairy squashes" covered by the protests enumerated above is dutiable at 0.012 cents per pound under the provisions of the trade agreements with Cuba. As to said merchandise, the protests enumerated above are sustained and judgment will be entered in favor of the plaintiffs.

As to all other merchandise covered by those protests and as to the merchandise covered by all of the other protests in the instant record, the protests are overruled and judgment will be entered in favor of the defendant.